UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SKYCLIFF IT, LLC, OMICRON GLOBAL, LLC, and SKYCLIFF IT PRIVATE LIMITED,

Plaintiffs,

v.

N.S. INFOTECH LIMITED, NSI NEXTWEALTH IT SERVICES PRIVATE LIMITED, N.S. INFOTECH, LLC, MALLIKARJUN HURALIKOPPI, SANTOSH HURALIKOPPI and NEELA SHANKAR HURALIKOPPI,

Defendants.

**OPINION**
Civ. No. 17-05216 (WHW-CLW)

**Walls, Senior District Judge**

In this action involving the disintegration of a cross-border business combination, Defendants N.S. Infotech Limited ("NSI Limited"), NSI Nextwealth IT Services Private Limited ("NSI Nextwealth"), N.S. Infotech Corp. ("NSI Corp."), N.S. Infotech, LLC ("NSI LLC"), Mallikarjun Huralikoppi, Santosh Huralikoppi, and Neela Shankar Huralikoppi (collectively, "Defendants") move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. Plaintiffs Skycliff IT, LLC ("SCI"), Omicron Global, LLC ("Omicron"), and Skycliff Private Limited ("SCI Private") (collectively, "Plaintiffs") oppose. ECF No. 19. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiffs SCI and Omicron are New Jersey LLCs, and SCI Private is a foreign company located in India. Amended Compl. ¶¶ 1–3, ECF No. 6. Defendants NSI Limited, NSI

---

[1] Unless stated otherwise, all facts are drawn from the Amended Complaint, ECF No. 6.

1

Nextwealth, NSI Corp., and NSI LLC are entities with the same business address in Atlanta, Georgia, and the three individual defendants are alleged to be Georgia residents and principals of the entity defendants. *Id.* ¶¶ 4–10. Plaintiffs assert claims for (i) a declaratory judgment (Count One); (ii) breach of contract (Counts Two and Six); (iii) breach of the covenant of good faith and fair dealing (Count Three); (iv) anticipatory breach of contract (Counts Four and Five); (v) conversion (Count Seven); (vi) fraud (Counts Eight and Nine); and (vii) tortious interference with prospective economic advantage (Count Ten).

The gravamen of Plaintiffs' Amended Complaint is that Defendants have refused to perform under the terms of a July 6, 2017 Memorandum of Understanding ("MOU"), which laid the groundwork for the negotiation and execution of an Asset Purchase Agreement and a Lease Agreement between Plaintiffs and Defendants. Specifically, Plaintiffs sought to purchase certain Indian assets from NSI Limited and NSI Nextwealth (together, the "India Seller"), and Untied States assets from NSI Corp. and NSI LLC (together, the "U.S. Seller"), and to lease certain real estate in India. *Id.* ¶ 17. The MOU contained an exclusivity provision preventing Defendants from shopping those assets to other prospective purchasers during and for twelve months after negotiations with Plaintiffs. Separately, it included a commitment to negotiate in good faith. *Id.* ¶¶ 22–23.

In accordance with the MOU, Plaintiffs provided Defendants with drafts of the Asset Purchase Agreement and Lease Agreement on July 11, 2017. *Id.* ¶ 29. In response, Santosh Huralikoppi informed Plaintiffs on July 13, 2017 that the parties must maintain the "status quo," and "made other comments indicating that the NSI Parties intend to forego their performance under the MOU, and have engaged in conduct violating" the exclusivity provision. *Id.* ¶ 30. The next day, Plaintiffs sent a letter demanding compliance with the MOU, *id.* ¶ 31, and "[t]he NSI

Parties have repudiated the MOU and have refused to provide any assurances that they will perform under the MOU," *id.* ¶ 32.

In reliance on the MOU, Plaintiffs made substantial investments of time and money, including training Defendants' personnel, assuming Defendants' operating expenses, paying for demolition, making business technology investments, hiring additional workers, and installing its proprietary software on computers in the real estate asset. *Id.* ¶¶ 26–27. Defendants "have locked-out SCI from the office located on the [real estate asset], and seized the computers, proprietary software, and confidential patient information protected under federal privacy laws," and have ignored repeated demands to return these assets. *Id.* ¶¶ 33–34. Defendants have also solicited offers from other parties for the purchase of the assets covered by the MOU, in violation of the exclusivity provision, and refused to negotiate in good faith. *Id.* ¶¶ 35–36.

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In assessing a plaintiff's claims, a district court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In two separate affidavits with exhibits, Defendants seek to put before the Court on this motion factual assertions that fall outside the four corners of the Amended Complaint. *See* ECF Nos. 15, 16. Defendants include these materials in an effort to (i) explain their side of the story regarding why and how negotiations between the parties broke down; (ii) buttress their argument that "it is now Plaintiffs who refuse to negotiate" under the MOU, Defs.' Br. at 2; and (iii) support their request for attorneys' fees under 28 U.S.C. § 1927, which provides for fees in cases where counsel "multiplies the proceedings . . . unreasonably and vexatiously . . . ."

Only the exhibits to the Huralikoppi Declaration, ECF No. 15, are properly considered on this motion to dismiss, given that the Amended Complaint explicitly references and relies on them. *See Mele*, 359 F.3d at 255 n.5 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."). Huralikoppi's own version of the events leading up to and following the parties' failure to finalize the agreements envisioned by the MOU, and the documents attached to the Weldon

Declaration (all of which post-date the filing of this action) are not properly considered when deciding a motion to dismiss under Rule 12(b)(6). *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

## DISCUSSION

### 1. NSI Corp.

Defendants first assert that the Amended Complaint must be dismissed in its entirety as against NSI Corp. because, despite Plaintiffs' characterization in the Amended Complaint, NSI Corp. was not the "U.S. Seller" in the MOU and otherwise had no involvement in either the MOU or the purchase or lease agreements. Defs.' Br. at 12. Plaintiffs do not address this issue in their opposition. *See* Pls.' Opp. Because the only reference in the Amended Complaint to NSI Corp. is Plaintiffs' claim that it, along with NSI LLC, is the "U.S. Seller," and because this assertion is belied by NSI Corp.'s absence from the MOU, the asset purchase agreement, and the lease, *see* Amended Compl. Exs. A–C, Defendants' motion to dismiss all counts against NSI Corp. is granted.

### 2. Counts Two through Four

Counts Two (breach of contract), Three (breach of the covenant of good faith and fair dealing), and Four (anticipatory breach of contract) relate to the MOU, and Defendants address them together. Defendants point out that the MOU states that it "outlines some of the key terms of the Sale, but does not represent a binding commitment by any Party to any particular term or to enter into any transaction, except as expressly specified herein," and that there is no specified time within which the parties must reach a final agreement. Defs.' Br. at 13. They go on to

argue that nothing in Santosh Huralikoppi's July 13, 2017 "status quo" email suggests a failure to negotiate in good faith; that they provided Plaintiffs with revised draft agreements in late August and early September 2017; and that it is now Plaintiffs who refuse to negotiate. *Id.* at 12–15.

Defendants next contend that Plaintiffs' allegation that Defendants breached the MOU's non-solicitation provision is conclusory and lacks supporting evidence, and that Defendants' failure to sign draft agreements cannot support Plaintiffs' claims because the MOU did not require the parties to ultimately enter into any transaction. *Id.*

a. Count Two

"To state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Count Two relies on allegations that, in violation of the MOU, (i) "the NSI Parties are actively soliciting offers from other parties for the purchase of the U.S. Assets, and India Assets and Real Estate," and (ii) "the NSI Parties have refused to perform under the MOU and ceased negotiating and cooperating with SCI in connection with the transaction." Amended Compl. ¶ 50–52.

Defendants misapprehend the standard of review on this motion when they contend that "[t]here is not a shred of evidence to support" Plaintiffs' solicitation-related claim—that, "[u]pon information and belief, the NSI Parties are actively soliciting offers" for the assets covered by the MOU. Amended Compl. ¶ 35. A Rule 12(b)(6) motion looks to pleadings, not evidence, and pleading upon information and belief is undoubtedly permissible. *McDermott v. Clondalkin Group, Inc.*, 649 Fed. Appx. 263, 267–68 (3d Cir. 2016). And where, as here, the plaintiff "does

6

not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible," those allegations can survive a Rule 12(b)(6) motion to dismiss. *See id.* at 268 (reversing grant of motion to dismiss where plaintiff's allegations "do not paraphrase in one way or another the pertinent . . . elements of the claims" but instead "explain *how* [defendant] allegedly breached the contract") (emphasis in original).

In addition, the Amended Complaint sufficiently alleges that Defendants "ceased negotiating and cooperating with SCI in connection with the transaction," Amended Compl. ¶ 52, in breach of Section E of the MOU, in which Defendants "agree[d] to negotiate in good faith and finalize the terms of the Sale," and to "cooperate with [Plaintiffs]" in achieving that goal, *id.* Ex. A.

Defendants' motion to dismiss Count Two is denied.

    b. Count Three

"In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130 (1990) (citations omitted). To succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract (unless excused); (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. *American First Federal, Inc.*

*v. Chance & McCann LLC*, No. 17-cv-2022, 2018 WL 1014164, at *4 (D.N.J. Feb. 22, 2018). A breach of the implied covenant of good faith and fair dealing may not arise out of the same conduct supporting a breach of contract claim, and the implied covenant may not override an express term of the contract. *Wade v. Kessler Inst.*, 172 N.J. 327, 341, 344–45 (2002).

Although the concept of good faith "defies precise definition[,] . . . [g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assocs.*, 182 N.J. 210, 224 (2005). "The party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* at 225 (citations omitted).

Count Three alleges that Defendants "acted in bad faith by not giving equal consideration to the interests of SCI as they have their own interests," and "by denying SCI and its affiliates the benefits to which they are entitled under the MOU." Amended Compl. ¶¶ 58–59. Plaintiffs further claim that "[t]he NSI Parties have ceased negotiating in good faith and cooperating with SCI in connection with the transaction and are refusing to perform, as required, under the MOU." *Id.* ¶ 36.

These allegations cannot support Count Three because they rely on breaches of the express terms of the MOU, and a breach of an express contractual term cannot support a claim for breach of the implied covenant of good faith and fair dealing. *See Wade*, 172 N.J. at 344. Claiming that Defendants "den[ied] [Plaintiffs] the benefits to which they are entitled under the MOU" is simply another way of saying that Defendants breached the MOU's terms. So too is

8

the claim that Defendants "have ceased negotiating in good faith"—Section E explicitly requires the parties "to negotiate in good faith and finalize the terms of the sale."

Count Three is dismissed with prejudice.

### c. Count Four

Anticipatory breach "entails a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." *In re Estate of Balk*, 445 N.J. Super. 395, 401 (App. Div. 2016), cert. denied, 2017 WL 1386658 (N.J. 2017) (quoting *Franconia Associates v. U.S.*, 536 U.S. 129, 143 (2002) (citing Restatement (Second) of Contracts § 250 (1981))). While it was once the view of New Jersey courts that an anticipatory breach "occurs when a party renounces or repudiates a contract by *unequivocally* indicating that it will not perform when performance is due," *Cipala v. Lincoln Technical Inst.*, 354 N.J. Super. 247, 251 (App. Div. 2002) (emphasis added), "the modern view does not limit anticipatory repudiation to cases of express and unequivocal repudiation of a contract. Instead, anticipatory repudiation includes cases in which reasonable grounds support the obligee's *belief* that the obligor will breach the contract." *Spring Creek Holding Co., Inc. v. Shinnihon U.S.A. Co., Ltd.*, 399 N.J. Super. 158, 179 (App. Div. 2008) (emphasis in original) (citations omitted).

In Count Four, Plaintiffs allege that Defendants' conduct "indicates their intention to forego their performance under the MOU before the time has come for their full performance under the MOU," and that Plaintiffs have given them "reasonable opportunity to comply with the MOU." Amended Compl. ¶¶ 63–65.

Plaintiffs state a claim for anticipatory breach. They allege that, after receiving drafts of the agreements contemplated by the MOU, Defendants got cold feet, preferring instead to maintain the "status quo" for an unspecified period of time, *id.* ¶ 30, and refusing to respond to

Plaintiffs' counsel's demand letter. *Id.* ¶ 31–32. In the context of an agreement specifying that "TIME IS OF THE ESSENCE," and under which Plaintiffs had already assumed Defendants' operating costs and other expenses, *see id.* Ex. A, these actions would plausibly provide Plaintiffs with "reasonable grounds to support [their] belief that [Defendants would] breach the contract." *Spring Creek*, 399 N.J. Super. at 179.

Defendants' motion to dismiss Count Four is denied.

### 3. Counts Five and Six

Count Five alleges anticipatory breach of the Asset Purchase Agreement, and Count Six alleges breach of the Lease Agreement. Plaintiffs state in their opposition that they voluntarily dismiss Counts Five and Six. Pls.' Opp. at 12. Consequently, the Court need not address Defendants' arguments regarding these counts, and the counts are dismissed with prejudice.

### 4. Count Seven

Plaintiffs support their conversion claim with allegations that Defendants "have willfully or negligently seized the computers, proprietary software, confidential information, furniture, furnishings, and equipment" belonging to Plaintiffs, and have refused to return them. Amended Compl. ¶¶ 83–85. Defendants respond that Plaintiffs fail to make out a conversion claim, and take the opportunity to argue, for the first time, that the entire action should be dismissed on *forum non conveniens* grounds because India is the proper forum for this dispute. Defs.' Opp. at 17–18.

#### a. Conversion Claim

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488 F.3d 163, 173–74 (3d Cir. 2007) (quoting *McAdam*

*v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citing *Mueller v. Tech. Devices Corp.*, 8 N.J. 201 (1951))). "A claim for conversion is established if a party proves that the alleged offender assumed and exercised the right of ownership over the party's goods or personal chattels without permission, and excluded the owner from exercising dominion over them." *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (App. Div. 1988).

Plaintiffs state a claim for conversion. They allege that Defendants seized their property without permission and have refused "repeated demands" to return that property. *See Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 275 F. Supp. 2d 543, 576 (D.N.J. 2003) (granting summary judgment on conversion claim where party held physical possession of goods and refused requests to return them).

b. *Forum Non Conveniens*

The Court has discretion to dismiss a case on *forum non conveniens* grounds "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging Co. v. Miller*, 510 U.S. 443, 447–448 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). "Though discretionary, a district court's resolution of a *forum non conveniens* issue should be guided by a three-step analysis, considering: (1) the availability of an adequate alternative forum to hear the case; (2) the appropriate level of deference due to the plaintiff's choice of forum; and (3) the relevant private and public interest factors." *Chigurupati v. Daiichi Sankyo Co., Ltd.*, 480 Fed. Appx. 672, 674 (3d Cir. 2012). "A defendant invoking *forum non conveniens* ordinarily bears a

heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007).

<u>Adequate alternative forum.</u> Defendants state that they are amendable to process in India, and that the claims asserted in the Amended Complaint are cognizable there. Defs.' Br. at 18. While Defendants do little more to satisfy their "heavy burden," the Court will assume that India offers an adequate alternative forum for this dispute, and turns to the remaining two analytical steps. *Sinochem*, 549 U.S. at 430.

<u>Deference to Plaintiffs' chosen forum.</u> "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards dismissal and trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255. There is little reason to second-guess Plaintiffs' forum choice in this action; two of the three plaintiffs are New Jersey residents, the MOU is governed by New Jersey law, and Plaintiffs executed the MOU in New Jersey. *See Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) ("[T]he greater the plaintiff's or the lawsuit's bona fide connection to . . . the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."); *Piper Aircraft*, 454 U.S. at 255–56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."). The Court will therefore grant Plaintiffs the customary "strong presumption in favor of" their forum choice. *Piper Aircraft*, 454 U.S. at 255.

<u>Public and private factors.</u> Relevant private factors for the Court's consideration include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of

premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).

Defendants do not meet their "heavy burden" of demonstrating that the public and private factors weigh in favor of dismissal. Defendants contend that "the property is [in India], the assets are there, and the parties are there." Defs.' Br. at 18. They do not, however, offer any support beyond these conclusory statements, which themselves are not entirely accurate (two of the plaintiffs are New Jersey entities, at least one defendant resides in the United States, and one category of "the assets" that are the subject of the MOU are located in the United States).

Regarding the private factors, the Court cannot say that superior access to proof would exist in India; relevant witnesses appear to reside in both countries (and at least one of the defendants appears to be a Georgia resident), and there is no indication that this matter will require consideration or exchange of any physical evidence. Nor is the Court able to determine, given Defendants' deficient treatment of this argument, that "other practical problems" exist with the present forum that would make India a preferable alternative forum.

Public factors do not favor dismissal, either. Defendants furnish no statistics regarding relative court congestion. Both New Jersey and India have articulable "local interests" in this controversy—on the one hand, two of the plaintiffs are New Jersey residents, and there is a local

interest in applying New Jersey law faithfully to the parties' agreements; on the other, some of the assets and defendants are located in India, and the alleged conversion occurred there. To the extent that foreign law would apply to Plaintiffs' conversion claim, that might favor dismissal. But Defendants fail to address the issue, and thus fall far short of their "heavy burden." *Sinochem Intern.*, 549 U.S. at 430.

Defendants' motion to dismiss Count Seven is denied, and their *forum non conveniens* argument fails as to all counts.

### 5. Counts Eight and Nine

Counts Eight and Nine allege legal and equitable fraud, respectively. In order to prove legal fraud, a plaintiff must demonstrate "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981). In contrast, recovery for equitable fraud requires only that the plaintiff "prove his or her reasonable reliance on a material misrepresentation of fact." *Daibo v. Kirsch*, 316 N.J. Super. 580, 588 (App. Div. 1998).

Plaintiffs' fraud claims rest on allegations that Defendants knowingly and intentionally misrepresented that (i) they intended to sell Plaintiffs the U.S. or India assets, and lease them real estate; (ii) Plaintiffs could, beginning July 1, 2017, operate the U.S. and India assets as their own businesses; and (iii) upon closing, Plaintiffs could utilize office space on the subject real estate. Amended Compl. ¶¶ 88, 98. Defendants argue that these counts must be dismissed because they are not pled with the particularity required by Federal Rule of Civil Procedure 9; specifically, the Amended Complaint fails to specify the alleged speaker, the time of the alleged misrepresentations, and how such representations were made. Defs.' Br. at 18. Defendants also

14

contend that Plaintiffs' fraud claims are based on forward-looking statements of intent, which cannot form the basis for fraud. *Id.* Finally, Defendants argue that Plaintiffs' fraud claims are duplicative of their contract-related claims and must be dismissed "due to the economic loss doctrine." *Id.* at 19.

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against specious charges. *Seville Industrial Machinery Corp. v. Southmost Co.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Further, the plaintiff must allege who made the purported misrepresentations and what specific misrepresentations were made." *Id.* In other words, to satisfy Rule 9(b), a plaintiff must "plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotation marks omitted).

Applying this standard to the allegations in this case, the Court finds that Plaintiffs have failed to plead fraud. First, the Complaint provides almost no detail whatsoever regarding the date, time, and place of the alleged misrepresentations, and fails to otherwise "inject[ ] some precision and some measure of substantiation into their allegations of fraud." *Frederico*, 507 F.3d at 200. The "who" in the Amended Complaint is unconstrained. Plaintiffs attempt to cover all of their bases by claiming generally that all Defendants made the alleged misrepresentations;

15

yet, in doing so, they sacrifice the particularity that Rule 9(b) demands. Amended Compl. ¶¶ 88, 98; *see KBZ Communications Inc. v. CBE Technologies LLC*, 634 Fed. Appx. 908, 913 (3d Cir. 2015) (affirming dismissal where "[n]owhere in the Complaint does [plaintiff] single out any of the Individual Defendants and allege that they engaged in fraudulent conduct"); *Donnelly v. Option One Mortg. Corp.*, No. 11–7019, 2013 WL 3336766, at *7 (D.N.J. July 1, 2013) (dismissing fraud claim against company because Complaint failed to state "who at [company] made [alleged] fraudulent statements").

The "what" also lacks specificity, and amounts generally to a promise that Defendants will perform under the terms of what eventually became the MOU. *Id.*; *see Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08–4333, 2009 WL 1652156, at *8 (D.N.J. June 10, 2009) (finding plaintiff failed to meet Rule 9(b) standard where it alleged that the defendant "entered into the [agreement] without the intention to be bound by its terms" and failed to state the "names or the specifics of what may have been said").

Perhaps most troubling is Plaintiffs' allegation of "when" Defendants made the misrepresentations. Plaintiffs claim the Defendants committed fraud "from June 2017 until July 13, 2017, *id.*, yet any fraud claims based on alleged misrepresentations made after the parties signed the July 6, 2017 MOU would be barred by the economic-loss rule. *See Metex Mfg. Corp. v. Manson*, No. 05–2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008) (finding that claims sounding in fraud-in-the-inducement are not subject to the economic-loss rule under New Jersey law); *KBZ Communications*, 634 Fed. Appx. at 913 (affirming fraud-in-the-inducement claim dismissal under economic-loss rule where alleged misrepresentations post-dated signing of agreement).

Second, Rule 9(b) also requires that Plaintiffs plead their reasonable reliance on Defendants' alleged misrepresentations with particularity. *See Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 258 (D.N.J. 1990). Plaintiffs' sole reliance-related claims—that "SCI did reasonably rely on Defendants' material misrepresentations and omissions," Amended Compl. ¶¶ 93, 102—are boilerplate allegations lacking any factual enhancement, and thus fail to meet Rule 9(b)'s particularity requirements.

Plaintiffs' fraud claims are dismissed without prejudice, and they are granted leave, if they wish, to re-file an amended complaint within 45 days of this Opinion and accompanying Order to seek to meet the requirements of Rule 9(b).

### 6. Count Ten

In Count Ten, Plaintiffs allege that Defendants tortuously interfered with Plaintiffs' prospective economic relations. Specifically, Plaintiffs claim that by locking them out of the office on the subject real estate, in which Plaintiffs installed computers containing their proprietary software and confidential patient information, Defendants prevented them from "accessing said patient information and providing services to its U.S. Clients," thus damaging Plaintiffs' "prospects of future economic advantage." Amended Compl. ¶¶ 110–12. In response, Defendants accuse Plaintiffs of "recycling their breach of contract claims and trying to assert them as torts." Defs.' Br. at 19.

Under New Jersey law, an action for tortious interference requires: (1) a protectable right (a prospective economic relationship); (2) interference done intentionally and with malice; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) damage from the interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739,

17

751 (1989). "Malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996).

For now, Plaintiffs have sufficiently stated a tortious-interference claim. First, they have alleged a protectable right—a "reasonable probability that the U.S. Clients will continue to engage" them, Amended Compl. ¶ 108. Second, they claim intentional and malicious interference. According to the Amended Complaint, Defendants "possessed knowledge of the existence of these business relationships" and wrongfully "locked out SCI from the office located on the Real Estate" that they knew contained the computers, patient information, proprietary software, and employees Plaintiffs used to serve their customers. *Id.* ¶¶ 109–11. Third, without Defendants' interference, "there was and is a reasonable probability that SCI would have received greater economic benefits" serving its U.S. Clients. *Id.* ¶ 113. Finally, Defendants' alleged conduct "has cause dissatisfaction among SCI's U.S. clients, thereby damaging SCI's business relationship with its U.S. Clients and the prospects of future economic advantage." *Id.* ¶ 112.

Defendants' motion to dismiss Count Ten is denied.

7. **Count One**

Count One seeks a declaratory judgment declaring (i) "that the U.S. Seller, India Seller, and Principals must immediately transfer title to and exclusive possession of the U.S. Assets, India Assets, and Real Estate to SCI, in accordance with the terms of the Asset Purchase Agreement and Lease," Amended Compl. ¶ 46a; (ii) that the MOU requires the Defendants to adhere to its provision regarding good-faith negotiations, *id.* ¶ 46b; (iii) that Defendants adhere to the exclusivity provision in the MOU, *id.* ¶ 46c; (iv) that Defendants are jointly and severally liable for "reimbursement of all legal and professional fees and costs reasonably incurred in

connection with SCI's pursuit of the same or the enforcement of the MOU," *id.* ¶ 46d; (v) the parties' respective rights and obligations under the MOU, Asset Purchase Agreement, and Lease, *id.* ¶ 46e; and (vi) an award of various fees and costs to SCI, *id.* ¶ 46f. Defendants do not specifically address Count One in their motion to dismiss.

The purpose of a declaratory judgment is "to end uncertainty about the legal rights and duties of the parties to litigation . . . ." *See N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Human Serv.*, 89 N.J. 234, 242 (1982). To grant a declaratory judgment, there must be an actual controversy, and parties must have a stake in the outcome. *See Gilbert v. Gladden*, 87 N.J. 275, 295 (1981). The New Jersey Declaratory Judgment Act requires that it be "liberally construed and administered." N.J. Stat. Ann. 2A:16–51. But the court has discretion to grant or deny a request for declaratory relief "when to do so would be just and fair." *N.J. Ass'n for Retarded Citizens*, 89 N.J. at 241. A declaratory judgment action should lie "only in cases where it could be of some practical convenience to the parties." *Larson v. Gen. Motors Corp.*, 134 F.2d 450, 453 (2d Cir. 1943) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

As discussed, Plaintiffs voluntarily dismiss their claim relating to the Asset Purchase Agreement (Count Five) and Lease Agreement (Count Six), presumably because those agreements were never executed. Consequently, the Court will dismiss Count one as to the declaration requested in paragraph 46a of the Amended Complaint. For the reasons already stated, Defendants' motion to dismiss the remainder of Count One is denied.

### 8. Reimbursement of Attorneys' Fees

Finally, Defendants tack on to their Rule 12(b)(6) motion a request that the Court order Plaintiffs to reimburse their attorneys' fees under 28 U.S.C. § 1927, which provides for fees in cases where counsel "multiplies the proceedings . . . unreasonably and vexatiously . . . ." Defs.'

Br. at 19–20. This request is procedurally infirm given Defendants' styling of this motion as a motion to dismiss under Rule 12(b)(6). *See* ECF No. 13 (notice of motion). Consequently, the Court will not consider it.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows.

DATE: 23/My 2018

William H. Walls
Senior United States District Court Judge